[L. A. No. 6357. Department Two.—January 11, 1921.]

MINNIE HANCE JACKINS, Respondent, v. QUEEN OIL COMPANY (a Corporation), et al., Appellants.

[1] AGENCY—EXECUTION SALE OF PLEDGED STOCK—RELATIVE RIGHTS OF PURCHASER AND PLEDGEE.—A judgment creditor who is a purchaser at execution sale of corporate stock which had been transferred as security for the repayment of a loan of money cannot claim that he was a *bona fide* purchaser, as against the transferee, because the transfer had never been entered on the books of the corporation and he was without personal knowledge or notice of the transfer, where the secretary of the corporation had acted for him in procuring the loan upon which the judgment was secured and had informed him of the ownership of the stock but not of its transfer, of which the secretary had personal knowledge.

APPEAL from a judgment of the Superior Court of Los Angeles County. Russ Avery, Judge. Affirmed.

The facts are stated in the opinion of the court.

A. L. Abrahams and P. B. D'Orr for Appellants.

Joe Crail and Frank Rouse for Respondent.

WILBUR, J.—In this action the plaintiff seeks to establish her title to forty thousand shares of the capital stock of the defendant corporation, evidenced by certificates Nos. 46 and 47. Her claim is based upon the transfer from her husband, Harry Jackins, as security for the repayment to her of a loan of three thousand five hundred dollars which was made March 26, 1918, but was never made on the books of the defendant corporation. On April 19, 1918, appellant Frank P. Bacon levied an attachment on such stock in an action against Harry Jackins. On July 15th a judgment was entered, and on July 25th an execution was levied, in that action, and on September 18, 1918, the stock was sold at sheriff's sale and purchased by appellant Bacon for the sum of five hundred dollars, which was credited on the aforesaid judgment. It is conceded that neither the levy of the attachment nor of the execution is good as against the prior assignment of the stock to the pledgee, but the appellants claim that the transfer to the plaintiff is invalid as to appellant Bacon, who is a *bona fide* purchaser for value and without notice at the sheriff's sale, as the transfer to respondent was never entered on the corporation books (Civ. Code, sec. 324). The trial court, however, found that the defendant Bacon had notice of the prior assignment to the plaintiff as security before he purchased at the sale, and the question here is whether this finding is supported by the evidence. It is not claimed by respondent that the appellant Bacon had personal knowledge or notice of the previous assignment in pledge. So far as the question of notice is concerned, the case turns upon the knowledge of W. N. Hamaker, who, it is claimed by respondent, was Bacon's agent. It appears that Hamaker was the secretary of the defendant corporation and that Harry Jackins had applied to him to have the stock transferred to the name of the pledgee in 1911, when he first secured a loan of three thousand dollars from her and transferred the stock certificates to her in pledge —and had several times thereafter made a similar request, particularly when the new stock certificates were issued on the twenty-sixth day of March, 1918, and were on that day assigned by Harry Jackins to his wife. That Hamaker was

fully informed as to the pledge to respondent is not disputed. Appellants' contention, however, is that this knowledge was not secured by Mr. Hamaker in his capacity as agent for Bacon, or in connection with Bacon's purchase of the stock, and that, therefore, his knowledge was not properly chargeable to defendant Bacon.

[1] Was Hamaker the agent of Bacon? It appears from the testimony of the appellant himself that Mr. Hamaker had been acting for him in the making of loans for several years; that, acting in this capacity, he had made the loan upon which the judgment was secured against Harry Jackins and others, under which the stock was sold; that the original note was taken in the name of Mr. Hamaker and subsequently transferred to the appellant; that Mr. Hamaker had been endeavoring for some years to collect the note, and that such efforts were made on behalf of Bacon. Appellant Bacon further testified that everything Mr. Hamaker did in connection with the note and with its collection was done with his authority; that all information he secured about the Queen Oil stock he received from Mr. Hamaker. He was further asked the following questions and answered as follows: ''Q. Mr. Hamaker had charge of the transaction of the lawsuit, sale, and collection of the judgment, as well as the note, didn't he? A. We worked together you might say. Q. You depended upon him to look after it for you? A. Very largely, yes, sir. Q. And what he did in that regard he did as your agent? A. I presume so. Q. And with your authority? A. Yes.'' It thus appears that the court was fully justified in inferring from the evidence that Mr. Hamaker was assisting in the conduct of the litigation against Harry Jackins and for that reason had informed him of the fact that there was stock standing on the books of the corporation in the name of Harry Jackins, although at the time he knew that the property had been assigned to the respondent as security. It further appears that when the attachment was levied about the 19th or 20th of April Mr. Hamaker called up the defendant, Harry Jackins, and told him that he had been served with the attachment on the Queen stock and Mr. Jackins told him that his wife held the stock as collateral security for a loan. That the court was justified in holding that appellant Bacon was charged with the notice given Hamaker at the time of the levy of the attachment, when Hamaker was co-operating

with Bacon in procuring the attachment, and in the securing of a judgment which was to be enforced against this stock seems too clear to require either discussion or citation of authorities.

Judgment affirmed.

Sloane, J., and Lennon, J., concurred.